**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DELVON KING,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT NALLEY,<br><br>Defendant. | Civil Action No. TDC-17-0628 |

**MEMORANDUM OPINION**

In July 2014, Defendant Robert Nalley, then a judge on the Circuit Court for Charles County, Maryland, ordered a deputy sheriff to activate the "stun-cuff" worn by Plaintiff Delvon King during a criminal trial in which King was the defendant. The cuff sent thousands of volts of electricity through King's body, causing him to collapse in the middle of the courtroom and scream in agony. At the time that the cuff was activated, King was addressing the court and was not a danger to himself or others.

King has now filed suit against Judge Nalley, seeking compensatory and punitive damages under 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Pending before the Court is Judge Nalley's Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment. Having reviewed the Complaint and the briefs, the Court finds no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

On July 23, 2014, Judge Nalley was presiding over the jury selection in *State v. Delvan Louis King aka Saamir Jhaleed Khaleel KingAli*, No. 08-K-13-001347IN, a criminal case in the Circuit Court for Charles County, Maryland in which King was on trial. King, who was representing himself, initially insisted that his name was Saamir Jhaleed Khaleel KingAli. After Judge Nalley repeatedly asked King how he wished to be addressed, King agreed to be referred to as "Mr. KingAli." King then launched into a prepared argument, asserting that the court lacked jurisdiction over him because he is a Moorish American and an "aboriginal indigenous man." Mot. Dismiss Ex. 2 at 5–7, ECF 11-2. When Judge Nalley asked whether King had *voir dire* questions to offer, King objected to the question, refused to respond, and instead continued his argument that the court lacked jurisdiction over him. Judge Nalley twice ordered him to stop, but King did not comply.

King was wearing a stun-cuff, a device meant to protect the public from violent defendants by allowing security personnel to apply a physically devastating electric shock from a distance. After Judge Nalley ordered King to stop his jurisdictional argument to no avail, Judge Nalley directed the deputy sheriff to activate the stun-cuff, instructing him, "[D]o it. Use it." Compl. ¶ 4, ECF No. 1. Up to that point, King had not raised his voice, moved from counsel table, or made any aggressive or threatening statements or actions.

The surge of electricity from the stun-cuff caused King to crumple. He writhed on the ground, his muscles overwhelmed with painful spasms, and screamed for several minutes. After a recess, King had to continue his own representation while still feeling the stun-cuff's effects.

For his actions that day, Judge Nalley was disqualified from serving as a judge. Order, *In re: The Honorable Robert C. Nalley* (Md. Sept. 5, 2014), Mot. Dismiss Ex. 3, ECF No. 11-3. He

was also charged in the United States District Court for the District of Maryland with the criminal offense of depriving King of his federally protected rights under color of law, in violation of 18 U.S.C. § 242. Judge Nalley pleaded guilty and was sentenced to 12 months of probation, a $5,000 fine, and anger-management counseling. Judgment, *United States v. Nalley*, No. 16-0023-WGC (D. Md. Mar. 31, 2016). This § 1983 suit followed.

**DISCUSSION**

Judge Nalley has moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) or alternatively, for summary judgment under Rule 56. He argues that he acted in his judicial capacity when he ordered the stun-cuff's use and therefore should be protected from suit by absolute judicial immunity. In opposing the Motion, King asserts that Judge Nalley's order to use a stun-cuff on a non-threatening, *pro se* defendant was so unreasonable that it cannot be deemed a judicial act subject to the protection provided by judicial immunity.

## I. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver,* 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss, a court may "take judicial notice of matters of public record" and may consider exhibits submitted with the motion "so long as they are integral to the

complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Should the court consider exhibits that do not fall into either of these categories, the motion must be construed as a motion for summary judgment. Fed. R. Civ. P. 12(d).

With their briefs, the parties have submitted the following exhibits: (1) the transcript of the *voir dire* proceedings during which Judge Nalley ordered the stun-cuff's use; (2) a video recording of the moment when the stun-cuff was activated and its aftermath; and (3) the transcript of Judge Nalley's sentencing hearing in federal court. Each of these exhibits may properly be considered on a motion to dismiss. The transcript and video from the *voir dire* proceedings are integral to King's Complaint, and neither party has objected to their authenticity. The transcript is also a court record subject to judicial notice. *See Philips*, 572 F.3d at 180; *see also Burgess v. Balt. Police Dep't*, No. RDB-15-0834, 2016 WL 795975, *3 n.3 (D. Md. Mar. 1, 2016) (taking judicial notice of an official hearing transcript that was also integral to the complaint). As for the sentencing hearing transcript, while it is not integral to the Complaint, the Court will take judicial notice of both the sentencing hearing and the judgment in Judge Nalley's criminal case. *See* Fed. R. Evid. 201(b)(2); *Philips*, 572 F.3d at 180; *see also United States v. Simpson*, No. 93-6781, 1996 WL 329535, *1 (4th Cir. June 7, 1996) (taking judicial notice of a plea hearing transcript). The Court therefore considers these exhibits and construes the Motion as a motion to dismiss.

## II. Judicial Immunity

It is firmly established that judges are absolutely immune from civil lawsuits for money damages when they are exercising the authority vested in them. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."); *King v. Myers*, 973 F.2d 354,

356 (4th Cir. 1992); *Chu v. Griffith,* 771 F.2d 79, 81 (4th Cir. 1985). This rule allows judges to perform their functions without harassment or intimidation and ultimately is a benefit to the public at large "whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation omitted); *see Forrester v. White*, 484 U.S. 219, 225 (1988) (tracing the history of judicial immunity to medieval English common law and explaining that "[b]esides protecting the finality of judgments or discouraging inappropriate collateral attacks, . . . judicial immunity also protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants").

This immunity extends even to judicial action taken erroneously, maliciously, or in excess of authority. *Mireles*, 502 U.S. at 12–13; *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Pierson*, 386 U.S. at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly[.]"). And necessarily so. Allegations of bad faith or malice normally "cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11. Thus, allowing a damages claim against a judge to proceed past the motion-to-dismiss stage, even if liability and damages are ultimately avoided, would effectively deny immunity to malicious and innocent judges alike. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that immunity consists of "*immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial").

Judicial immunity therefore can be overcome in only two circumstances. First, a judge is denied immunity when not performing a "judicial act"; second, a judge is not immune for an action "performed in the 'clear absence of all jurisdiction over the subject-matter.'" *King*, 973 F.2d at 356–57 (quoting *Stump*, 435 U.S. at 356 n.6). King does not argue—nor could he—that

Judge Nalley lacked subject matter jurisdiction over his criminal trial. The United States Supreme Court has held that even when a judge's action exceeds judicial authority, if it is taken in support of and in the course of matters properly before the judge, such behavior "cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13. The Court's focus is thus on whether, by ordering courtroom security to use excessive force on a criminal defendant, Judge Nalley performed a judicial act.

To determine whether a particular act is "judicial," courts consider (1) "the nature of the act itself," specifically, "whether it is a function normally performed by a judge," and (2) "the expectations of the parties," as reflected in "whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

The first factor, the nature of the act, does not address an action's propriety or lawfulness. Rather, even if the judge's particular action is improper and in excess of judicial authority, it is still a judicial act as long as it relates to a "general function" typically performed by a judge. *Mireles*, 502 U.S. at 13. For example, in *Mireles*, the Supreme Court held that a judge was entitled to judicial immunity after he ordered police officers "to forcibly and with excessive force seize and bring" an absent attorney to the courtroom, which resulted in the officers using "unreasonable force and violence" against the attorney. *Id.* at 10. The Court concluded that even though an order to use excessive force is improper and not an action a judge would normally undertake, because it was taken as part of a "general function normally performed by a judge," specifically, "directing police officers to bring counsel in a pending case before the court," it constituted a "judicial act" for purposes of immunity. *Id.* at 13.

Likewise, Judge Nalley's improper order to activate the stun-cuff was a judicial act because it was taken as part of the general function of maintaining order in the courtroom, a

routine and well-known judicial function in Maryland and elsewhere. The Maryland Code of Judicial Conduct provides that: "A judge shall require order and decorum in proceedings before the court." Md. Rules 18-102.8(a). Likewise, the Court of Appeals of Maryland has stated that "courtroom security is an ultimate determination that rests entirely and solely in the discretion of the trial judge[.]" *Cooley v. State*, 867 A.2d 1065, 1076 (Md. 2005). *See also Bowers v. State*, 507 A.2d 1072, 1078 (Md. 1986) (stating that the trial judge "is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial" (quoting *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir. 1970))). The Supreme Court has also recognized this essential judicial function, stating that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen*, 397 U.S. 337, 343–44 (1970) (concluding that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations" and providing a non-exclusive list of constitutionally permissible tactics to control a disruptive defendant).

As for the second factor, the expectations of the parties, King was a criminal defendant appearing before Judge Nalley for trial. Reasonable individuals in King's position would understand that they were interacting with Judge Nalley in his judicial capacity. Thus, Judge Nalley's order to use the stun-cuff was a judicial act. As Judge Nalley issued that order while he was presiding over a case for which he had subject matter jurisdiction, judicial immunity applies. *See Mireles*, 502 U.S. at 13.

Notably, another federal court, in a strikingly similar case, relied on *Mireles* to hold that a Los Angeles County Municipal Court judge was entitled to judicial immunity after she ordered the use of a "stun belt" on a criminal defendant in her courtroom. *Hawkins v. Comparet-*

*Cassani*, 33 F. Supp. 2d 1244, 1248, 1251 (C.D. Cal. 1999), *rev'd in part on other grounds*, 251 F.3d 1230 (9th Cir. 2001). While the judge asserted that the defendant had "made several statements out of order and acted in a generally disruptive manner," the defendant alleged that the judge had sought to silence his speech and had "acted in bad faith and with punitive intentions." *Hawkins*, 33 F. Supp. 2d at 1248. The court found that the command to activate the stun belt was a judicial act because it (1) related to the general judicial function of enforcing order in court proceedings; and (2) was issued during a hearing on a pending criminal case and thus was not taken in clear absence of jurisdiction. *See id.* at 1250–51.

As *Mireles* and *Hawkins* illustrate, the fact that Judge Nalley ultimately exercised his judicial authority in an unwarranted, unreasonable, and unlawful manner does not prevent the application of judicial immunity. Indeed, judicial immunity regularly shields conduct, even outrageous conduct, which could otherwise be subject to civil liability. In one case, a judge received judicial immunity even though she ordered a completely unnecessary strip search and body-cavity search in view of male law enforcement officers of an elderly woman arrested on a civil contempt charge. *Figueroa-Flores v. Acevedo-Vila*, 491 F. Supp. 2d 214, 218–19, 222–24 (D.P.R. 2007). Another judge received immunity even though he "berated" an attorney "with a long string of offensive and threatening epithets," including some relating to the attorney's ancestry; "threatened" the attorney with physical harm and jail; and forced the attorney to publicly recant a prior public complaint about a trial's fairness. *Dean v. Shirer*, 547 F.2d 227, 228–29, 231 (4th Cir. 1976). Still another judge received judicial immunity after approving the sterilization of a young woman, who allegedly had mental disabilities, without her knowledge or consent. *See Stump*, 435 U.S. at 351–53, 362–64.

In the face of such precedent, King's reliance on *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974), is misplaced. In *Gregory*, the plaintiff sought damages under § 1983 after a state court judge unsuccessfully ordered the plaintiff to leave the courtroom, then "forced" the plaintiff "out the door, threw him to the floor in the process, jumped on him, and began to beat him." *Gregory*, 500 F.2d at 61. The United States Court of Appeals for the Ninth Circuit held that this assault was not protected by judicial immunity because "[t]he decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature[.]" *Id.* at 64. King argues that *Gregory* applies here because Judge Nalley similarly "used violent, excessive, and unreasonable force" against King. Opp'n Mot. Dismiss at 13, ECF No. 12. In *Gregory*, however, the court itself differentiated between a physical assault perpetrated by the judge's own hands, and an assault conducted, as here, by a security officer acting under the judge's orders. *Gregory*, 500 F.2d at 64–65. As discussed above, the Supreme Court has held since *Gregory* that a judge's order to a security officer to use even excessive and unreasonable force is protected by judicial immunity. *Mireles*, 502 U.S. at 13. Indeed, the continuing viability of the distinction identified in *Gregory* is itself in question, given that *Mireles* overruled a Ninth Circuit decision that principally relied on *Gregory*. *See id.* at 11; *Waco v. Baltad*, 934 F.2d 214, 215–16 (9th Cir. 1991).

None of this is to say that Judge Nalley's behavior was lawful or appropriate. His order to electrocute King was a shocking misuse of his judicial power. Nevertheless, our judicial system has remedies for such misconduct, which include removal from office and criminal charges, both of which occurred here. But under the doctrine of absolute judicial immunity, such remedies do not include the payment of civil damages. King's lawsuit must therefore fail.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a motion to dismiss, is GRANTED. A separate Order shall issue.

Date: September 20, 2017

THEODORE D. CHUANG
United States District Judge